IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

TAMMY LOU FONTENOT, as Administratrix of the Estate of DARRYL WAYNE TURNER, deceased,

    Plaintiffs,

v.

TASER INTERNATIONAL, Inc.,

    Defendant.

CASE NO.: 3:10-CV-125

PLAINTIFFS' MOTION IN LIMINE NUMBER TWO TO EXCLUDE EVIDENCE THAT DARRYL TURNER WAS IN POSSESSION OF MARIJUANA AND/OR WAS UNDER THE INFLUENCE OF ANY DRUG AT THE TIME OF THE SUBJECT INCIDENT AND TO EXCLUDE THE EXPERT OPINIONS OF DEFENDANT'S EXPERT TOXICOLOGIST, RONALD SIEGEL, Ph. D

I.    Introduction

Plaintiff anticipates that at the time of trial, defendant, TASER International, Inc. (TASER) will attempt to introduce evidence that Darryl Turner was in possession of a small amount of marijuana (about three grams), reportedly found in his sock after he was pronounced dead at the emergency room. TASER may also argue that Mr. Turner was under the influence of marijuana or some other illicit drug. It is believed that TASER will offer such evidence though Ronald Siegel, Ph.D., a toxicologist.

Such evidence and opinions should be excluded from the trial of this action and Dr. Siegel should be barred from testifying for the defendant on the grounds that the evidence and opinions are irrelevant to any issue before the court, and any probative value, even if it existed, is far outweighed by its highly prejudicial nature.

II. The Evidence Is Irrelevant

Prior to the commencement of trial, the court may exclude any evidence that it considers irrelevant to the issues in a particular case. Fed. R. Evid. 401. Evidence that Mr. Turner was in possession of a small amount of marijuana at the time of this incident is irrelevant to the claims and defenses in this case for several reasons. First, there is no evidence that he was actually under the influence of marijuana (or any other drug for that matter) at the time because a toxicology screen conducted by the Medical Examiner's office did not test for THC and no other illicit drugs were detected. More importantly, not a single expert, on either side of this case, has ever opined that any use of marijuana by Mr. Turner (assuming it could be proven) in any way caused or contributed to his death.

Since such evidence is not probative to the cause of Mr. Turner's death, it should be excluded as irrelevant.

III. Acting as a Gatekeeper, the Court Should Exclude the Expert Testimony of TASER's Expert Toxicologist, Ronald Siegel, Ph.D. Because it is Irrelevant and Unreliable.

The admissibility of expert testimony is governed by federal law than state law. Rule 702 of the Federal Rules of Evidence permits the admission of testimony based on

2

"scientific, technical, or other specialized knowledge" by experts qualified by "knowledge, skill, experience, training, or education" if the testimony is both relevant and reliable. The trial judge must act as a gatekeeper, admitting only that expert testimony which is **relevant** and **reliable**. **Daubert v. Merrell Dow Pharms., Inc.**, 509 U.S. 579, 589 (1993).

Testimony is relevant if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, which means that is must be "tied to the facts of the particular case." Id. at 591.

With regard to scientific knowledge, the trial court must first determine whether the reasoning or methodology used is scientifically valid and applied appropriately to the facts at issue in the trial. Id. at 589. To aid the Court in this gatekeeping role, the Supreme Court has identified several key considerations, including whether the expert opinion can be tested; whether it has been subjected to peer review; the error rate of the methods that the expert employed; the existence and maintenance of standards used in the expert's methods; and whether the expert's methods are generally accepted in the scientific community. Id. at 592-94; **see also Anderson v. Westinghouse Savannah River Co.**, 406 F.3d 248, 261 (4th Cir. 2005). The goal of **Daubert**'s gatekeeping requirement is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." **Kumho Tire Co. v. Carmichael**, 526 U.S. 137, 152 (1999). The Court has broad discretion in determining whether the **Daubert** factors reasonably measure reliability in a given case. Id. at 153.

The expert opinions of Dr. Siegel regarding Darryl Turner's behavior as being indicative of illicit drug use should be excluded under **Daubert** because they are not based on any scientific methodology. Such a conclusion is patently apparent from the core opinions he expressed during his deposition testimony, which include the following:

1) There is no pharmacological evidence that Darryl Turner had any cocaine in his system at the time that he died (Siegel Deposition, 19:2-6);

2) There is no pharmacological evidence that Darryl Turner had PCP in his system at the time that he died (Siegel Deposition, 25:5-9);

3) There is no pharmacological evidence that Darryl Turner had ever ingested methamphetamine in his life (Siegel Deposition, 22:11-6);

4) Dr. Siegel has no evidence or information that the consumption of any illegal drug or substance by Darryl Turner was to a reasonable medical certainty the cause of his death (Siegel Deposition, 25:22-25; 26:1);

5) No drugs were detected in Darryl Turner's system according to toxicological tests performed by the Medical Examiner (Siegel Deposition, 107:1-10)

6) Dr. Siegel saw no evidence in any of the materials he was provided and reviewed that established that Darryl Turner was under the influence of marijuana during this incident (Siegel Deposition, 116:10-13)

7) Dr. Siegel is not opining that Darryl Turner was under the influence of marijuana during this incident (Siegel Deposition, 117:20-23); and

8) Dr. Siegel is not offering the opinion that Darryl Turner's cardiac arrest can be explained to a reasonable degree of medical or pharmacological certainty as a consequence of illicit drug ingestion (Siegel Deposition, 121:20-25; 122:1).

As Dr. Siegel concedes, there simply is no pharmacological evidence to prove that Darryl Turner was actually under the influence of illicit drugs at the time of the subject

incident. Dr. Siegel is left to offer the unreliable and untested opinion that a "cluster" of "behaviors" exhibited by Mr. Turner at the time of the subject incident are consistent with someone who is under the influence. Dr. Siegel admits, however, that other equally plausible reasons exist to explain the behavior. Such a speculative and unreliable opinion should be excluded from this trial. It is clear that TASER is attempting to introduce evidence concerning Mr. Turner's "behavior" to poison the jury.

Dr. Siegel's opinions are both irrelevant and unreliable and should be excluded under **Daubert**.

## IV. THE COURT SHOULD EXCLUDE THE EVIDENCE AS PREJUDICIAL.

Fed. R. Evid. 403 permits the Court to exclude relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury."

It is clear that the mere mention that Darryl Turner was in possession of even a small amount of marijuana at the time of the subject incident or that his behavior was consistent with a person being under the influence of illicit drugs will cause extreme prejudice to plaintiff by confusing, misleading and inflaming the jury. Hearing such evidence, jurors will likely conclude that Darryl Turner was, in fact, under the influence of illicit drugs (despite the fact there is no evidence to prove this), that his behavior can be attributed to his inferred drug usage, and may mistakenly conclude that he was, therefore, responsible for his own death. Plaintiff will never obtain a fair trial of her

5
Case 3:10-cv-00125-RJC-DCK   Document 104   Filed 07/05/11   Page 5 of 8

claims if such evidence is introduced during the trial.

The Court should consider the deposition testimony of TASER's expert in cardiology, who refused to opine on any relationship between alleged drug use and this death:

> Q   And aside from the marijuana issue, which I'll come to later, you're not opining that any drugs of abuse, either in Darryl Turner's history or that were on board when he had this cardiac arrest, contributed in any way to this cardiac arrest; is that correct?
>
> A   Again, I would defer to Dr. Segal on that. I'm not a toxicologist.  Now, you mean – but just to clarify, please, Mr. Burton, you mean by "drugs on board," you mean like illicit drugs?  I'm sure that's what you were talking about.
>
> Q   Yes.  What did you think I was talking about?
>
> A   Just to be clear, lidocaine was found but that, of course, was used in CPR, but I just wanted to be sure, and it is a drug.  So it is a broad term.
> Q   But you don't think the lidocaine contributed to the cardiac arrest, do you?
>
> A   No, sir.
>
> Q   Well, aside from the marijuana, are you saying that he had some drugs in his system that contributed to this cardiac arrest?
>
> MS. GIBEAUT:  Objection.  Asked and answered.
>
> THE WITNESS:  Unfortunately, that question is not answerable based upon toxicological testing.
>
> BY MR. BURTON:  So you don't intend to offer that opinion, do you, that there was drug use?  I mean, I don't want to go in there, Doctor -- you know, the rules -- you've been in court lots and lots of times -- with a bunch of speculation.
>
>     I want to know what opinions that you're going to offer to a

6

Case 3:10-cv-00125-RJC-DCK   Document 104    Filed 07/05/11   Page 6 of 8

reasonable medical certainty about the issues in this case, and the biggest issue in this case is the cause of the cardiac arrest, as I think you understand.

So are you going to say that based on your review of his behavior when he was tasered that you think that he had some sort of drugs on board other than the marijuana that contributed to this cardiac arrest? Are you going to say that?

A   Well, I will talk about marijuana with regard to cardiac effects. But as I said before, behaviorally, I do have concerns, but I would defer to Dr. Segal on that, and that's what I'll say.

Schapira deposition at 38:24 to 42:8.

Q   Now, are you saying to a reasonable medical certainty that marijuana contributed to this cardiac arrest?

A   I can't say that. I'm saying it's a possibility but not –

Q   We're not talking about possibilities, Doctor. Okay? We're not. We're talking about medical scientific evidence that will pass a **Daubert** gatekeeper, that a judge is going to hear and allow or not allow a jury to pass on.

Now, do you have any evidence based on peer-reviewed articles and scientific methodology that would establish to a reasonable degree of medical certainty that Mr. Turner had marijuana in his system that contributed to this particular cardiac arrest: Yes or no?

MS. GIBEAUT:  Object to form.

THE WITNESS:  No.

Schapira deposition at 102:2 to 102:19.

Accordingly, any comment upon, or attempt to introduce such evidence will be improper and highly prejudicial to the plaintiff. Even if the Court sustained an objection to the evidence at trial and instructed the jury to disregard it, the evidence would be so

7

prejudicial and inflammatory that plaintiff could not receive a fair trial.

IV.     Conclusion

Based on the foregoing, it is clear that evidence of the fact that Darryl Turner may have been in possession of a small amount of marijuana at the time of the subject incident has no relevancy to any issue raised by this case and should, therefore, be excluded. It is equally clear that the opinions of Ronald Siegel, Ph.D., to the affect that Darryl Turner's behavior is consistent with someone under the influence of illicit drugs should be excluded. The mere suggestion of such evidence will inflame the jury and cause extreme prejudice to the plaintiff thereby resulting in a denial of her right to a fair trial.

DATED: July 5, 2011          Respectfully submitted,

/s/Peter M. Williamson

Peter M. Williamson, **Pro Hac Vice**
WILLIAMSON & KRAUSS
21800 Oxnard Street, Suite 305
Woodland Hills, CA 91367
Tel: (818) 2236-5704
Email: pmw@wandklaw.com

Attorneys for Plaintiff
TAMMY LOU FONTENOT, As Administratrix of the Estate of DARRYL WAYNE TURNER, deceased

### CERTIFICATE OF SERVICE

The above-signed hereby certify that a copy of the foregoing was served this 5th day of July, 2011, through the Court's ECF system to all counsel of record.

8
Case 3:10-cv-00125-RJC-DCK   Document 104   Filed 07/05/11   Page 8 of 8