UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| TAMMY LOU FONTENOT, as Administratrix of the Estate of DARRYL WAYNE TURNER, deceased,<br><br>        Plaintiff,<br>v.<br><br>TASER INTERNATIONAL, INC.,<br><br>        Defendant. | NO. 3:10-CV-125 |

**DEFENDANT TASER INTERNATIONAL'S GLOBAL RESPONSE
OPPOSING PLAINTIFF'S MOTIONS IN LIMINE**

Scott D. MacLatchie (Bar No. 22824)
WOMBLE, CARLYLE, SANDRIDGE
    & RICE
301 South College Street, Suite 3500
Charlotte, North Carolina 28202
Telephone: (704) 331-4942
Email: SMacLatchie@wcsr.com

John R. Maley (*pro hac vice*)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 231-7464
Email: jmaley@btlaw.com

*Attorneys for Defendant
TASER International, Inc.*

# TABLE OF CONTENTS

I. ARGUMENT ............................................................................................................. 1

    A. Motion in limine #2 [Dkt104,102] should be denied because Turner's criminal behavior, including marijuana possession, is relevant to cause of death, contributory negligence, and damages. ........................................... 1

        1. Marijuana bears materially on cause of death ................................. 2

        2. Marijuana bears materially on the estate's alleged damages ......... 2

        3. Marijuana bears materially on contributory negligence ................. 2

    B. Motion in limine #1 [Dkt101] should be denied because contributory negligence is a jury question, not a proper subject for a ruling in limine ............... 3

        1. A motion in limine cannot serve as a substitute for an untimely dispositive motion ......................................................................... 3

        2. Contributory negligence applies even though Turner was not the "user" of the ECD ..................................................................... 3

        3. Contributory negligence is not adjudged from a subjective standard, but an objective one ............................................................ 4

        4. The interlocutory summary judgment ruling properly leaves the issue of contributory negligence for the jury ................................. 5

    C. Motion in limine #3 [Dkt103] should be denied because Professor and Attorney Stephen Ward's testimony materially bears on contributory negligence and aids the jury's understanding of damages ......................................... 6

    D. Motion in limine #4 [Dkt106] should be denied because the Charlotte-Mecklenberg Police Department's (CMPD's) reprimand of Officer Dawson and CMPD's advisory policy against extended duration discharges are relevant ............................................................................................. 7

        1. CMPD's advisory policy bears on the adequacy of TASER's warnings, including against extended duration exposures, and the officer's knowledge of deployment protocols and risks ......................... 7

        2. CMPD's discipline of Officer Dawson materially bears on TASER's misuse defense, based on both extended duration and split-the-belt-line warnings, and the adequacy of those warnings .............. 8

II. CONCLUSION ................................................................................................. 10

## I. ARGUMENT

Defendant TASER International, Inc. ("TASER") requests that Plaintiff's four motions in limine be denied as moot or denied on their merits.

### A. Motion in limine #2 [Dkt104,102] should be denied because Turner's criminal behavior, including marijuana possession, is relevant to cause of death, contributory negligence, and damages.

Plaintiff should not be permitted to paint Turner as an innocent bystander who contributed nothing to his ultimate demise by stripping the case of its context that led to his agitated state and violent confrontation with law enforcement. The motion in limine to exclude evidence of marijuana (as amended) should be denied as moot and as meritless.[1] First, TASER has not listed Dr. Ronald Siegel as a witness in its exchanged final trial disclosures and has no intention of calling him to the stand; accordingly, that portion of the motion in limine should be denied as moot [Dkt104pp1-4].

Second, the undisputed possession and likely use of marijuana is relevant to (1) cause of death, (2) damages recoverable by the estate, and (3) TASER's contributory negligence defense. Relevant evidence means evidence having any tendency to make the existence of a fact of consequence more or less probable. Fed.R.Evid. 401. And Plaintiff has not shown how this material and probative evidence has been substantially outweighed by any alleged prejudice.

Plaintiff has not presented all the facts. She suggests that Turner merely "may have" been in possession of marijuana. He was. It is undisputed. Turner possessed three bags of marijuana at the time of the incident. Witnesses in the store noted his behavior was violent and extraordinary. A police officer suspected drug use noting Turner's red eyes. Expert testimony in this case accounts for marijuana given Turner's uncharacteristic behavior and the presence of marijuana on his person, and marijuana's contribution to Turner's death. The medical examiner performed an autopsy, but did not test for all drugs (including THC or PCP) to rule Turner's drug use out.

---

[1] Plaintiff filed a motion in limine on this subject of marijuana, and then amended the motion and filed an additional motion in limine (slightly tweaked) on the same subject [*cf.* Dkt. 102, 104]. The motion, as amended, should be denied.

### 1. Marijuana bears materially on cause of death.

The evidence bears materially on cause of death. Dr. Gary Vilke, a board-certified emergency department physician with substantial experience in sudden cardiac death, and independent researcher on the effects of ECDs on humans, opines that marijuana *in and of itself* has been reported to cause death in patients with cardiac abnormalities, and that marijuana should be considered in the cause of death analysis. Dr. James Stone, a cardiovascular pathologist, opines that Turner had just such a cardiac abnormality: hypertrophic cardiomyopathy that resulted in an abnormally large heart—a condition well associated with sudden unexpected cardiac arrest, particularly for those (like Turner) experiencing exertion and agitation. TASER should not be stripped of medical evidence bearing on the jury's determination of cause of death. The evidence is thus probative and admissible. That Plaintiff does not like the evidence does not keep it from the trier of fact.

### 2. Marijuana bears materially on the estate's alleged damages.

Unfortunately, due to his conduct on March 20, 2008, Turner's life was heading down a bad path (criminal record, drug use, jail, probation, joblessness, etc.) that reasonable jurors will likely conclude limit the damages recoverable under the wrongful death statute. *See* N.C.G.S. § 28A-18-2(b)(4). In fact, the court in *Pearce v. Fletcher*, 328 S.E.2d 889, 889-91 (N.C. Ct. App. 1985), found evidence that a nineteen year old had stopped attending school, worked periodically as a waitress, lived at home, and had history of drug and alcohol abuse all relevant to her "present monetary value . . . to the person entitled to receive the damages recovered" under North Carolina law. Plaintiff put these damages at issue, and an order in limine would deprive the jury of material evidence, such as approved in *Pearce*, bearing on the proper assessment of damages in this case.

Turner's possession of marijuana is relevant, and a limiting instruction could address any concerns raised by Plaintiff.

### 3. Marijuana bears materially on contributory negligence.

North Carolina law bars a product claim where a "claimant failed to exercise reasonable care under the circumstances in the use of the product, and such failure was a proximate cause of the occurrence that caused the injury." NCGS §99B-4(3). Turner unreasonably created the situation leading to his agitated state, police intervention, and use of force that inherently has risk of arrest-related injury

2

or even death. That includes his possession of marijuana and the reasonable inference the jury may make that he had used marijuana causing him to engage in a violent confrontation with store employees and law enforcement ("F____ the police," he says as he resists). This motion in limine should be denied.

> **B. Motion in limine #1 [Dkt101] should be denied because contributory negligence is a jury question, not a proper subject for a ruling in limine.**
>> **1. A motion in limine cannot serve as a substitute for an untimely dispositive motion.**

This motion in limine reads as a dispositive motion, speaking in terms of whether negligence and proximate cause should go to the jury. A motion in limine is not a substitute for a summary judgment motion. *See*, *e.g.*, *C&E Servs., Inc. v. Ashland Inc.*, 539 F. Supp.2d 316, 323 (D.D.C. 2008) (motion in limine improper as dispositive motion); *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. 1997) ("If [plaintiff] wanted to preclude [the defendant] from raising these defenses at trial . . . then he should not have filed a motion in limine on the eve of trial, but should instead have filed a summary judgment motion."). Such a motion would not be timely under the scheduling order, or even fair on the eve of trial. It should be denied outright.

>> **2. Contributory negligence applies even though Turner was not the "user" of the ECD.**

Even if a proper motion in limine, Plaintiff has North Carolina law wrong. Plaintiff argues that contributory negligence under NCGS § 99B-4 somehow does not apply because Turner was not using the ECD [Dkt101pp2-3]. North Carolina law soundly rejects this position:

- First, the statute bars a product claim where a "claimant failed to exercise reasonable care under the circumstances *in the use of the product*, and such failure was a proximate cause of the occurrence that caused the injury." NCGS § 99B-4(3) (emphases added). The statute's plain language does not limit its application to the "claimant's" use.

- Second, the North Carolina Supreme Court has rejected such an argument, and revised opinions of lower courts that have reached the conclusion that Plaintiff draws. "NCGS § 99B-4(3) codifies the common law standard of contributory negligence and does *not* limit the defense to a plaintiff's misuse of the product." *Nicholson v. American Safety Utility Corp.*, 488 S.E.2d 240, 241 (N.C. 1997) (emphases added).[2]

---

[2] The North Carolina Court of Appeals in *Nicholson v. American Safety Utility Corp.*, 476 S.E.2d 672, 678-80 (N.C. Ct. App. 1996), had held that NCGS § 99B-4(3) applied only to "plaintiff's use" of the product, not plaintiff's negligence in general. The North Carolina Supreme Court affirmed the denial of summary judgment, but "for the

3

- Third, the Fourth Circuit Court of Appeals has rejected Plaintiff's argument. *See Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 721-22 (4th Cir. 1995) (focus of contributory statute *not* on plaintiff's "use of the product" *per se*, but whether he exercised reasonable care under the circumstances of its use).
- Fourth, other sections in the Product Liability Act are specific in stating "claimant" or "user," *see* NCGS §§ 99B-4(1, 2, 3), so the absence of such language here indicates that this defense applies during "the" use of the product—just as it says. Plaintiff's position is inconsistent with classifying Turner as a "consumer" for the benefit of the Product Liability Act, but without being subject to the same defenses of the Act.

Plaintiff equates Turner's criminal conduct to a patient who contributes to an illness that a doctor thereafter mistreats [Dkt101p3]. Plaintiff cites a decision from a divided panel of the Court of Appeals, but *not* the North Carolina Supreme Court's decision. *See Cobo v. Raba*, 495 S.E.2d 362, 363-66 (N.C. 1998). That case actually *reversed* a jury verdict because no instruction (when the plaintiff had "engaged in high-risk behavior, including drug abuse") had been given on contributory negligence—the same mistake Plaintiff invites this Court to make. North Carolina law clearly holds that a manufacturer's alleged negligence does *not* undermine the defense of contributory negligence. *See Miller v. Miller*, 160 S.E.2d 65, 73 (N.C. 1968) (even "negligence which concurs with that of the defendant in producing the occurrence which caused the original injury will bar all recovery, even though the plaintiff's negligence was comparatively small"). The motion in limine should be denied.

### 3. Contributory negligence is not adjudged from a subjective standard, but an objective one.

In the mode of a dispositive motion, Plaintiff also argues that Turner's appreciation of the risk should not go to the jury. That concern is answered quite simply by the North Carolina Supreme Court:

> In order for contributory negligence to apply, it is not necessary that plaintiff be *actually aware* of the unreasonable danger of injury to which his conduct exposes him. Plaintiff may be contributorily negligent if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety. Simply put, the existence of contributory negligence does not depend on plaintiff's *subjective* appreciation of danger; rather, contributory negligence consists of

---

reasons stated herein rather than those stated by the Court of Appeals." *Nicholson*, 488 S.E.2d at 245. Particularly, the North Carolina Supreme Court held that NCGS § 99B-4(3) "clearly provides that one who is negligent 'under the circumstances in the use of the product' will be barred from recovery," so courts must consider all circumstances surrounding its use, "not just plaintiff's conduct with respect to the product itself." *Id.* at 244; *see also* 241 ("NCGS § 99B-4(3) codifies the common law standard of contributory negligence and does not limit the defense to a plaintiff's misuse of the product"). In short, "contributory negligence in the context of a products liability action operates as a bar to recovery in the same manner as in an ordinary negligence action." *Id.*

conduct which fails to conform to an *objective* standard of behavior—the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury.

*Smith v. Fiber Controls Corp.*, 268 S.E.2d 504, 506 (N.C. 1980) (citations and quotations omitted). Objectively Turner ignored unreasonable risks that would occur to a prudent person interacting with law enforcement and faced with its use of force. *See also Braswell v. N.C. A&T State Univ.*, 168 S.E.2d 24, 30-31 (N.C. Ct. App. 1969) (even accidental ricocheted shooting by campus security officers was viewed as within a student's reasonable expectation once he joined a "mob" to force gymnasium doors open at a dance). The motion in limine should be denied.

### 4. The interlocutory summary judgment ruling properly leaves the issue of contributory negligence for the jury.

The summary judgment ruling left the issue of contributory negligence for the jury. It did not grant summary judgment on this defense. It would be improper on the eve of trial to expand that ruling beyond its scope.

First, TASER does *not* have to show that Turner was negligent *per se* for this defense under NCGS § 99B-4. Any negligence will do. *See, e.g.*, *Sawyer v. Food Lion, Inc.*, 549 S.E.2d 867, 870 (N.C. Ct. App. 2001) (contributorily negligent by using scaffolding near risks); *Lashlee v. White Consol. Indus., Inc.*, 548 S.E.2d 821, 827 (N.C. App. 2001) (contributory because plaintiff attempted to cut down tree on ladder while aware of chainsaw's kickback potential). Contributory negligence that bars product liability claims ranges from foolish to criminal behavior.

Here, the evidence will show that Turner, despite contrary duties, acted unreasonably in ignoring instructions from law enforcement and committing criminal acts, which directly caused his violent agitation (with an enlarged heart) and directly caused the use of force and ultimately his death. That addresses duty, breach, causation, and harm. Turner's conduct need only be "a" cause of his injury, not "the" cause. *See Culler v. Harmlett*, 559 S.E.2d 195, 200 (N.C. Ct. App. 2002). An order in limine here would improperly supplant the jury's function. *See also Braswell*, 168 S.E.2d at 30-31 ("joining in illegal mob action is not an exercise of reasonable care [and] in so doing plaintiff assumed the risk of whatever injury he might receive as a result"); *Hinton v. City of Raleigh*, 264 S.E.2d 777, 779 (N.C. Ct.

5

App. 1980) (suspect negligent by participating in a robbery, refusing to surrender when ordered by police, and crouching and pointing towards officers).

Second, aside from ordinary negligence, TASER can also prove negligence *per se*. The assault, disorderly conduct, and resisting officer statutes imposed on Turner specific duties that by their nature were designed to protect *others* from harm, including those within a public store and law enforcement officers. If protecting the public from vicious animals constitutes a public safety statute, then protecting the public from vicious people should be too. *See, e.g., Swaney v. Shaw*, 219 S.E.2d 803 (N.C. Ct. App. 1975) (violation of statute requiring confinement of vicious animals was negligence *per se*). A statute need not be criminal to be a public safety statute. In North Carolina, a violation of safety statutes may be negligence *per se*. *See also Byers v. Standard Concrete Prods. Co.*, 151 S.E.2d 38 (N.C. 1966) (violation of bridge weight limit was negligence *per se*); *Lutz Indus., Inc. v. Dixie Home Stores*, 88 S.E.2d 333 (N.C. 1955) (violation of electric code was negligence *per se*); *Sellers v. CSX Trans., Inc.*, 402 S.E.2d 872 (N.C. Ct. App. 1991) (statute requiring maintenance of safe railroad crossings was negligence *per se* statute).

In short, contributory negligence is a jury question, and the motion in limine should be denied.

### C. Motion in limine #3 [Dkt103] should be denied because Professor and Attorney Stephen Ward's testimony materially bears on contributory negligence and aids the jury's understanding of damages.

Plaintiff argues that Stephen Ward's testimony would be irrelevant—but based on the sole assumption that the contributory negligence defense no longer applies to this case. That assumption has already been shown to be wrong, so the motion in limine based on relevance should be denied. Moreover, Turner's criminal behavior materially bears not just on his contributory negligence, but on damages awardable under the wrongful death statute. *See Pearce*, 328 S.E.2d at 889-91 (evidence of drugs relevant to decedent's "present monetary value . . . to the person entitled to receive the damages recovered" under NCGS § 28A-18-2(b)(4)). The motion in limine must be denied accordingly.

In addition, Plaintiff argues that the "expected laundry list of crimes" committed by Turner at the time of this incident would cause prejudice and inflame the jury. Any such evidence of contributory negligence rarely paints a plaintiff in a good light, but that does not mean it is not permitted as evidence in a case. *See Hinton*, 264 S.E.2d at 779 (suspect negligent by participating in a robbery, refusing to

6

surrender when ordered by police, and crouching and pointing towards officers). Under NCGS § 99B-4(3), *all* the circumstances surrounding a product's use must be examined by the jury. *See Nicholson*, 488 S.E.2d at 245. Any slight prejudice that might exist here does not substantially outweigh the probative value—particularly in light of past North Carolina cases finding such conduct pointedly relevant to a contributory negligence finding. The motion in limine should be denied.

> **D.    Motion in limine #4 [Dkt106] should be denied because the Charlotte-Mecklenburg Police Department's (CMPD's) reprimand of Officer Dawson and CMPD's advisory policy against extended duration discharges are relevant.**

Again, based on mere Fed.R.Evid. 401 relevance, in their fourth motion in limine, Plaintiff seeks to exclude material evidence of what CMPD officers deploying ECDs knew about exposure risks, and what transpired with Officer Dawson as a result of his misuse of the ECD in his interactions with Turner. Both pieces of evidence materially bear on (1) the adequacy or effectiveness of TASER's warnings, (2) the defense of misuse, (3) the warnings against extended ECD durations, and (4) the officer's failure to follow instructions on close range applications.

> **1.    CMPD's advisory policy bears on the adequacy of TASER's warnings, including against extended duration exposures, and the officer's knowledge of deployment protocol and risks.**

As exhibited again in their trial brief, Plaintiff argues not just that TASER's warnings failed to warn against chest shots, but also cardiac risks with extended duration discharges [Tr. Br. at 9, 14-15, arguing that "[t]here are no slides in any training setting any limit on the duration or number of X26 cycles that can be safely used on a human being," and that "Versions 10 through 14 are replete with instructions that multiple and prolonged cycles can be appropriate under such circumstances, and are silent on warnings that such prolonged exposure can increase cardiac risk"]. They make this an issue in the case but unfairly seek to exclude material evidence that bears on TASER's defenses.

Here, for nearly *three years* before the altercation with Turner, TASER repeatedly warned CMPD against continuous and extended duration ECD applications, doing so first with a special Training Bulletin in June 2005. TASER issued specific Product Warnings in 2005, separately in 2006, and again in 2007 to CMPD that likewise warned against using ECDs in prolonged applications. TASER further provided updated TASER CD/DVD Training Versions 12, 13, and 14 in 2006 and 2007 again

7

expressly warning of the same concern.

So important (and adequate) were the warnings to CMPD that (beginning with TASER's Training Bulletin in 2005) CMPD promptly issued its own internal advisory document to its officers through its learning management system to address deployment protocol and risks. Everyone in the department was obligated to review this warning. This CMPD advisory document—still in effect at the time of the Turner incident and today—quoted several paragraphs from the TASER June 2005 Bulletin 12, including that *"Users should avoid prolonged, extended, uninterrupted discharges or extensive multiple discharges whenever practicable*," and that "[p]articularly when dealing with persons showing symptoms of excited delirium, use of the TASER system should be combined with physical restraint techniques to *minimize the total duration of the struggle and to minimize the total duration of TASER system stimulation.*"

First, CMPD's policy and reprimand shows that TASER's warnings were effective. CMPD understood the risk. The warnings were clear and timely, and of such importance that CMPD channeled the communications (indeed, verbatim in instances) to its officers. Second, CMPD's policy bears on Officer Dawson's knowledge of attendant risks. TASER has no further duty to warn of risks that are already known or obvious to officers. *See, e.g.*, NCGS § 99B-5(b) ("no manufacturer or seller of a product shall be held liable in any product liability action for failing to warn about an open and obvious risk or a risk that is matter of common knowledge"). Third, the policy bears on misuse as Officer Dawson violated this very instruction in his interactions with Turner. The misuse statute concerns warnings tied to a *product*, not a *person*; it is not limited to those coming from a manufacturer or employer as Plaintiff suggests, but to those that concern a particular product—in this case, the ECD. *See* NCGS §99B-4(1). The motion in limine should be denied.

> **2. CMPD's discipline of Officer Dawson materially bears on TASER's misuse defense, based on both extended duration and split-the-belt-line warnings, and the adequacy of those warnings.**

Misuse of the ECD precludes recovery. "No manufacturer or seller shall be held liable in any product liability action if . . . the use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of

8

reasonable and diligent care should have known of such instructions or warnings." NCGS § 99B-4(1).

The CMPD Review Board determined that Officer Dawson had used the ECD contrary to instructions and procedure and suspended him accordingly, with additional training on the ECD planned on his return. TASER will call as an expert the School Director and Chief Instructor for Subject Control/Arrest Techniques from the North Carolina Justice Academy, John Combs. Director Combs has provided expert opinion echoing the CMPD Review Board, specifically concluding that the initial ECD application was justified based on Turner's conduct, but that the continued duration of the ECD discharge beyond the initial 5-second window was contrary to both TASER's training materials and CMPD policy. Plaintiff is also wrong that the close range application to the chest was not also misuse [Dkt106p2] as that exposure directly violated TASER's warning to "split the belt line."

CMPD's interpretation of TASER's warnings as adequate to warn against continuous and extended duration ECD exposures and CMPD's discipline of Officer Dawson for violating such instructions materially tends to prove the misuse defense and disprove the inadequacy claim. Officer Dawson's discipline is probative of CMPD's view that TASER's warnings (repeated in the policy) were adequate to warn against certain conduct/risks, and its view that these adequate warnings were violated in the interactions with Turner. As the direct consumer, CMPD's interpretation of adequacy and misuse is particularly relevant to whether TASER sufficiently warned law enforcement officers sophisticated in the use of force, and whether Officer Dawson inappropriately deviated from those warnings in applying force. No better evidence exists than what the consumer admits the warnings communicate, and what the consumer admits its officer did not do to comply. The motion in limine should be denied.

## II. CONCLUSION

The motions in limine [Dkts101-104,106] should be denied accordingly.

Respectfully submitted,

| | |
|---|---|
| *s/Scott D. MacLatchie* | *s/John R. Maley* |
| Scott D. MacLatchie (Bar No. 22824) | John R. Maley, *Pro Hac Vice* |
| WOMBLE, CARLYLE, SANDRIDGE & RICE | BARNES & THORNBURG LLP |
| 301 South College Street, Suite 3500 | 11 South Meridian Street |
| Charlotte, North Carolina 28202 | Indianapolis, Indiana 46204 |
| Telephone: (704) 331-4942 | Telephone: (317) 231-7464 |
| Email: SMacLatchie@wcsr.com | Email: jmaley@btlaw.com |

*Attorneys for Defendant TASER International, Inc.*

## CERTIFICATE OF SERVICE

The above hereby certify that a copy of the foregoing was served this 7th day of July 2011, through the Court's ECF system to all counsel of record.

INDS02 1174181v1