# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### NO. 3:10-CV-125

TAMMY LOU FONTENOT, as
Administratrix of the Estate of
DARRYL WAYNE TURNER,
deceased,

        Plaintiffs,

    v.

TASER INTERNATIONAL, Inc.,

        Defendant.

## DECLARATION OF JOHN ERIC COMBS

I, John Eric Combs, state the following:

1.    I am a competent adult and have personal knowledge of the following facts.

2.    Attached hereto is a true and accurate copy of my expert report submitted in the *Tammy Lou Fontenot, et al. v. TASER International, Inc.* litigation. Experts in my field reasonably and customarily rely on the facts and materials underlying my opinions. My opinions are expressed to a reasonable degree of scientific and/or professional certainty.

3.    I affirm under penalties of perjury that the foregoing statements are true.

Date: 12/01/10

                      _John Eric Combs_
                 John Eric Combs

DEFENDANT'S
EXHIBIT

84

*Tammy Lou Fontenot v. TASER International, Inc.et al.*
*Report of John E. Combs*

I am currently employed as the School Director and Chief Instructor for the Subject

Control/Arrest Techniques and Physical Fitness Training Programs, and am assigned to

the Specialized Tactical/Traffic Center at the North Carolina Justice Academy.   I am also a

sworn Police Officer (reserve) with full arrest powers and duties with the Fayetteville Police

Department (assigned to the Campbellton Patrol District), and have been employed in law

enforcement for over 23 years.  A copy of my Curriculum Vitae, which describes in more detail

my educational and work background, is attached.

Also included in my CV is a list of training courses, publications and presentations I have

been involved with; professional organizations to which I belong, and cases that I have been

involved in as an expert witness, to include this case and other ongoing cases.  I charge $125 per

hour for review, travel, and testimony (reports, deposition, and court) as an expert witness.

Opinions stated herein are based upon the materials that I have been presented and

reviewed to date, and are offered to a reasonable degree of professional certainty.   The items

reviewed to date include:

1. TASER International, Inc.'s ("TASER's") Answer to Complaint;
2. Autopsy Report and other ME documents – Mecklenburg County ME Office;
3. EMS Documents (Medic Mecklenburg County EMS);
4. Charlotte Fire Department Documents;
5. TASER download and analysis/sale documents;
6. TASER's Responses to Requests for Admission;
7. TASER's Answers to Interrogatories;
8. Police Department Administrative Review;
9. Photographs;
10. DVD 1 and DVD 2 – excerpts of Food Lion video;
11. Interviews and statements of the following: Officers Dawson and Pryor; Mary
   Blackert; Antwan Wesley; Joe Willis; Constance Hood; Kim Weathers; Dewey
   Wilson; Syhesia Moore; James Dodd; Santonia Judon; Timothy Wallace; Koua Thao;
   Christine Hickling; Andrea Parise; Amanda Hill; Kathlynn Miller; Suzanne Marson;
   Officer Almond; Detective Brandon; Major Graue; Officers Langford, Downs,
   Quates; Narrative Statements of Officers Meadows, John, Kulp, Dodd, Nelson,
   Farmer, Phelps, Sgt. Kraeger, Captain Lester, Captain Zinkann, Detective Rainwater,

1

      Major Medlock, Detective Fant, Detective Holmes, Sgt. Robbins, Detective Santiago, Officer Dawson, Officer Savage, Major Maglione, Sgt. Holshouser, Sgt. Henson, Detective Ward, Detective Manassah, Officer Jolly, Detective Kelly, Detective Martin, Officer Maye, Officer Hopkins;

12.     Deposition of Officer Dawson;
13.     2005 & 2007 TASER X26 Electronic Control Device ("ECD") ("X26 ECD") Operating Manuals;
14.     CMPD Use of Force 2003/X26 ECD TASER Training;
15.     CMPD Policy on the Use of Non-Deadly Force, 2003;
16.     TASER Instructor Certificate Course Excerpts;
17.     TASER Product Warnings, 09/28/05;
18.     TASER Product Warnings, 03/01/07;
19.     TASER Instructor and User Course Slides;
20.     TASER Training PowerPoint Slides, Version 12.0, 11/04;
21.

## OPINIONS

    Based on the documents I have reviewed, and my education, training, knowledge and experience in law enforcement, and especially the use of force in law enforcement, I can opine with a reasonable degree of professional certainty:

1.     That the training materials provided by TASER to CMPD are comprehensive, thorough, and equal or superior to other law-enforcement weapon manufacturers;

2.     That Daryl Turner's own illegal conduct brought about the situation that resulted in law enforcement use of force, and that the amount and method of force initially utilized by Officer Dawson under the circumstances that existed at the time of the incident, were reasonable and not excessive; and

3.     That Officer Dawson's continued use of the TASER X26 ECD weapon beyond the initial 5-second window of opportunity without re-assessing the situation was contrary to TASER's training materials and CMPD policy regarding the avoidance of prolonged or continuous exposure(s) to the TASER ECD's electrical discharge, resulting in discipline to Officer Dawson.

## REASONS FOR OPINIONS

1.     <u>TASER Training Materials</u>

    I am an experienced police office with over 23 years of service, and have substantial experience with multiple law enforcement weapons, ranging from firearms, batons, pepper spray,

2

TASER ECDs, and other weapons. I have received training on numerous weapons, and provided training on numerous weapons.

I have reviewed numerous documents from TASER to include instructor and user course materials, product warnings, training slides, operating manuals, including materials in effect at the time of sale to CMPD and at the time of the incident involving Darryl Turner, March 20, 2008. In my professional opinion as a police officer and trainer, these materials are very thorough, comprehensive, and equal or superior to other law enforcement weapon providers with which I am familiar. In addition, I completed the TASER Instructor course at the North Carolina Justice Academy, and was highly impressed with not only the quality and depth of the training materials, but also with the experience and professionalism of the TASER Master Instructor that taught the course. During that training course, I received two applications of a TASER ECD through voluntary exposures. The entire program – to include the training materials and power point slides – was quite thorough, well organized, and everything taught and distributed was completely relevant and of high importance to law enforcement, particularly concerning the use of the TASER product. During my 23 year career, I have received instructor-level training in the use of several methods of less-lethal force from various manufacturers to include OC spray – Mace Securities, International and Armor Holdings – various impact weapons (Modnadnock/PR-24, ASP, PPCT, and straight batons), and the following instructor certification programs from Armor Holdings: chemical munitions, distraction devices, and specialty impact munitions. In my professional opinion, the TASER ECD training materials were state of the art.

2. <u>Initial Use of Force</u>

To begin, as I have trained many law enforcement officers ("LEOs"), it is important to review the standard of "objectively reasonable" under *Graham v. Connor*, 490 U.S. 386

3

(1989)..... *"The test of reasonableness under the 4th Amendment is not capable of a precise definition or mechanical application... Its proper application requires careful attention to the facts of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the officer or others and whether or not he is actively resisting arrest or attempting to evade arrest by flight.*

*The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain and rapidly evolving--about the amount of force that is necessary in a particular situation."*

*The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."*

a)      Reasonableness must be judged from the <u>perspective of a reasonable officer</u> on the scene, coping with a tense, fast-evolving situation. The officer's *subjective perceptions* and *beliefs* must be based on *objective factors* that can be described by the officer(s). These perceptions must also be reasonable. It is important to note that these subject and situational factors (or "force variables") do not always fall neatly into a pre-designed "continuum."

b)      Decisions regarding the selection and deployment of force options must be based on the <u>totality of the circumstances as reasonably perceived by the LEO</u> and how they are evolving at the time of the incident, and at the moment of decision. All possible variants

4

are too numerous to list within this report, but some of these will be addressed as they

relate to this specific incident.

c) Determining the <u>amount</u> of force required to control a subject requires sound decision

making by the officer. Crucial to this ability is the officer's understanding of force

options, perception of the threat (this must be a reasonable perception), and the

reasonableness of the force option(s) used based on those perceptions.

To examine this issue as it relates to the defendants' use of force, it is important to look at

the surrounding facts and circumstances faced by the officer at the time the decision was made to

use force.

## CIRCUMSTANCES

**The severity of the crime.** Any kind of disturbance call can be an extremely dangerous

situation for any law enforcement officer due primarily to numerous unknown risk factors (i.e.,

potential ambushes, unfamiliar territory, unknown subject factors, lighting and terrain, cover

availability, weapon availability, etc.). Officers should always treat any disturbance complaint as

potentially dangerous and take what safety precautions are reasonable. No radio call should ever

be considered a "routine" matter, and officers must be tactically prepared and aware of the many

potential hazards.

Any time a law enforcement contact becomes physical, the chance for injury, possibly

serious injury or death, increases greatly. By his own illegal actions, including committing the

crimes under North Carolina law of trespass, simple assault against the store manager, disorderly

conduct, communicating threats, and resisting an officer, Mr. Turner caused this legitimate law

enforcement contact to escalate into a potentially very dangerous situation for all concerned.

5

When a law enforcement officer is placed in this kind of situation, he must establish control quickly, lest the situation become even more dangerous.

**Does the suspect pose an immediate threat to the officer or others?** During the initial contact of Turner inside the store, Officer Dawson indicated in his statement that he heard yelling as he walked into the store. Officer Dawson observed Turner throw an object at the manager and confront the manager in a hostile manner. Turner saw the officer and stated, "fuck the police," and turned his attention and aggression back toward the store manager. A reason to use a device such as the TASER ECD is to control an aggressive (or potentially) and/or violent subject. This will allow the officer to disrupt a subject's center of gravity – to take them out of a position of comfort, where they are the strongest and likely could put up higher resistance – without having to use "hands-on" physical control techniques. Without the ability to use a device such as the TASER ECD, the officer may have to struggle longer physically to gain control and may have to use higher levels of force to gain compliance. Turner tensed up, walked for several feet, and was able to grab and drop a metal shopping bag holder even after the TASER ECD was used for 37 seconds. Further, Turner did not follow the officer's instructions to place his hands behind his back after he fell to the ground.

It was reasonable for the officer at this point to perceive that Turner did pose an immediate and continuous threat of physical violence to him, the manager, and others while physically resisting the lawful instructions to submit to the arrest. Therefore, Turner was given a 5-second burst from the TASER ECD. It would be unreasonable and dangerous at this point for the officer to assume that Turner could be controlled by continuing with verbal commands or soft-hand control techniques (pressure points, joint controls) only, given Turner's demonstrated intent to physically resist his instructions.

6

**Is the suspect actively resisting arrest or attempting to evade arrest by flight?** To answer this, it is necessary to describe Turner's behavior and resistance. *Passive* resistance is simply letting gravity do its work. In other words, a suspect may not comply with an officer's verbal commands, but he/she is not doing anything of a physical nature to prevent the officers from making the arrest. In *active* resistance, the suspect is physically acting in some way to prevent the officer from making the arrest. This could mean walking/running away, pulling away from the officer, pushing the officer (which could also be interpreted as "assaultive"), moving from one place to another, or purposely tensing the muscles in the body. *Assaultive* resistance is when the suspect is actually physically attacking the officer using "personal weapons" such as hands, fists, feet, etc. After reviewing the materials listed on the previous page, I would characterize Turner's resistance as *active* immediately prior to and during the use of the TASER ECD and *assaultive* toward the manager. Further, according to Dawson, Turner – by his conduct when Dawson approached him – was potentially *assaultive* towards him as well.

In my opinion, this is certainly a reasonable perception given the fact that Turner was physically resistive, and still not in handcuffs and under control at the time Dawson deployed the TASER ECD, and continued in this manner until Officers Dawson and Pryor were finally able to apply the handcuffs while Turner was on the ground.

## UNDERSTANDING PERCEPTION

Essential to the understanding of force option selection is an examination of "perception." In selecting force options, an officer's reasonable perception of what is taking place is critical. Officers must look at each situation or the "totality of the circumstances" and continually *assess, plan, and act*. What one officer may perceive as a threat, another may not, due to any number of situational variables. This means that when the reasonableness of an

7

officer's actions is being questioned, we must place ourselves in the position of that officer at the moment of decision. Generally, when examining the reasonableness of an officer's actions, one should consider, 1) Was the officer's perception reasonable, and, 2) Were the officer's actions based from that perception also reasonable? <u>Reasonableness is not determined by any particular force option(s) but rather all of the surrounding circumstances that caused the officer to make the decision on the use of a particular force option(s)</u>. As I have taught officers many times, the following elements of "objective reasonableness" are listed below and are based on the officer's perception of the subject's actions as described in the statements:

> <u>Ability/Capability</u> – Addresses the physical ability/capability of a subject to carry out the action or threat. This must be a *logical* perception. Turner continued to physically resist the TASER ECD after ignoring instructions to calm down and back away from the manager. This came after Turner approached the manager behind the counter in what looked to be an aggressive and threatening manner (from review of the video DVD). Turner also had knocked a stand of some sort off the counter and threw an umbrella toward the manager. This indicates that it would be reasonable for the officer to perceive that Turner certainly had the ability to cause physical injury and potentially serious physical injury not only to the officer and the manager, but anyone else who may have been in close proximity.

> <u>Opportunity</u> – Indicates that the action or threat perceived by the officer is imminent, meaning "without delay." The subject must be in a position in which he can use their *ability/capability* to carry out the act or threat. According to the statements of the officer and others in the store, it seems a reasonable assumption and perception that Turner – by his earlier described conduct – posed a continuing imminent threat of potential injury to the

8

officer and others in the store. Further and relevant is that Turner continued to resist the

TASER ECD and attempt to walk away (and in fact, pick up and drop a metal bag holder)

while continuing to ignore instructions to get on the ground.

➢ Intent – Indicates the subject's mental state initiating an overt act (words or deeds). *Intent* is

initiating an overt act in furtherance of a crime or threat. According to Dawson's statements,

after the TASER ECD was used due to Turner's previously described behavior, ordered to

the ground and finally fell, continued to ignore instructions to place his hands behind his

back, and the TASER ECD was deployed again. As I instruct officers, in my opinion, it was

reasonable for the officer to have perceived that he and others were in imminent danger of

physical injury from Turner.

There is no single technique, book, video, training program, or force option model that will

even begin to address every possible scenario and level/type of resistance that officers may face.

To advocate that certain lower level and/or specific force techniques are the only ones that

officers may use in a given situation would be irresponsible and dangerous on the part of an

instructor, school, or law enforcement agency. To do so would "pigeon-hole" officers into

having to choose from a limited number of force options to address an infinite number of

possible situations. Officers must be able to choose appropriate force options based upon the

totality of the circumstances (i.e., the scenario and the resistive subject will influence the

officers' response in selecting appropriate force options), and those force options should be

based upon "gross motor skills." Techniques based on gross motor skills are simple to use,

easily recalled under stress, and most importantly, are applicable in a variety of situations. This

means that there is more than one reasonable force option for a given level of resistance. As

stated earlier, no single technique can address every possible variable, therefore, the best

9

techniques are the ones that can be applied to a wide variety of situations.

The purpose of a less-lethal force option is to gain control by stunning, distracting, or incapacitating the subject before using other techniques, such as handcuffing. If applied reasonably under the circumstances, this can create a window of opportunity to gain control over a suspect, are often performed naturally and instinctively, and are generally gross motor skill-based and simple to execute while under stress. Further, it is unrealistic to believe that a violent, assaultive, or highly resistive individual can be controlled or evaded without first momentarily incapacitating or stunning them. The PPCT definition for a stunning technique is, *"the stimulation of overwhelming sensory input that is sudden, intense, and unexpected."* The average stun can last several seconds to several minutes and will allow an officer sufficient time for follow up control.

Real law enforcement confrontations are quick, often violent, and sometimes take place in very confined public areas. These confrontations are also very different than the static environment of a spacious mat room during a training session, and the variables are too numerous to describe. To control a combative subject, an officer must completely overwhelm that subject's resistance as quickly as possible.

What is relevant is that the plaintiff continued to actively resist even after the TASER ECD was deployed and was refusing to obey numerous verbal instructions during the initial contact and while on the ground after the first deployment.

**CONSIDER THE FOLLOWING**

Most force option models (or "continuums") tend to list general officer options from the least intrusive to the most intrusive, in direct response to suspect resistance levels which are usually listed in the same way. The appearance of a hierarchy or specific order to employ any

10

force option is unintended. The systematic listing of force options is only done to clarify and illustrate the variety of applications. The "continuum," as it is sometimes called, is not a specific path for officers to follow in every situation. Any perceived pecking order or tier has nothing to do with the officer's individual decision processes for choosing the most reasonable option(s). In my opinion, it is reasonable to perceive that action is faster than reaction. Given this, if an officer is forced to rely on a rigid stimulus-response "continuum" of force model in their decision, it could likely cause hesitation which in turn could increase the length of the confrontation. In *Scott vs. Henrich* (39 F.3d. 912; 9th Circuit – September 9, 1994) the court said:

> *"The appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them. Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the least intrusive alternative (an inherently subjective determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment.*

> *Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."*

Stated another way, officers do not have to exhaust other lower levels of force options before moving to another, as long as the option(s) used are objectively reasonable under the

11

circumstances. In my opinion, Officer Dawson acted reasonably in his use of the TASER ECD both at the initial point of contact and while Turner was on the ground in order to control him and prevent his escape and/or further assaultive behavior.

3.     Window of Opportunity

TASER's training materials are replete with discussions of utilizing the window of opportunity to re-assess the situation, and that if incapacitation is not achieved, to reload another cartridge, re-assess, and re-deploy the device.   TASER's training materials address situations like this situation in which incapacitation is not achieved.   For instance, one PowerPoint training slide provides:   Look for Subject Reaction • No reaction or no change in subject behavior could indicate poor or no connection, low probe spread, or low muscle mass contact • Suggested tactical considerations: – Reload and target a different area – Drive-stun with a cartridge in place – Consider other force options [V. 14, Slide 146].  Furthermore, TASER provides instructions on "Controlling/Cuffing Under Power."  This essentially advises that if practicable, an officer should move in and handcuff a subject while the TASER ECD is cycling and the subject is incapacitated.  It is advisable that each cycle should be used as a "window of opportunity" to attempt to establish control while the subject is affected by the TASER ECD, and that the need for multiple cycles may be avoided if controlling under power can be accomplished.  And,

CMPD Use of Force 2003/X26 TASER ECD Training materials similarly call for a reassessment during TASER ECD deployment, and in fact include a TASER reference document and TASER International instructional slides (Version 13.0, May 2006) for the X26 ECD User Course in their training materials. In this document, the above language is used in the training slide (CMPD-00599, p. 40).  Further, CMPD policy on the TASER ECD advises that if the

12

device is not effective, turn the weapon off, reload with a 2nd cartridge and engage the suspect again.[i]

Officer Dawson did not follow the TASER training materials or the CMPD policies in this regard, resulting in an extended duration application to Mr. Turner. Officer Dawson was appropriately disciplined as a result of his improper use of the TASER X26 ECD contrary to training and policy.

These are my opinions to a reasonable degree of professional certainty based upon the materials reviewed to date. It is possible that these opinions could change based upon any new material.


*s/John E. Combs*
John E. Combs

---

[i] When officers are trained on the TASER X26 ECD, they are instructed that pulling the trigger initiates a 5-second cycle that shuts off automatically. In addition, the officers are trained to shut the device off at any time prior to the completion of the 5-second cycle by simply pushing the safety lever down into the safe position. The TASER X26 ECD's ability to continue to cycle beyond 5-seconds will extend the officer's window of opportunity to gain control and handcuff a resistive and possibly violent subject without fear of their weapon shutting down before this can be established. Unlike an OC spray force application, the effects of a TASER X26 ECD force application do not linger once the cycle has stopped, as I have personally experienced in voluntary exposures. Therefore, a motivated resistive subject would be in a position to continue an attack if the device stopped discharging sooner than the officer intended. The officer must be permitted the discretion to decide when to stop the TASER X26 ECD force application in order to establish control and to protect themselves and the public.

13

**John Eric Combs**
Fayetteville, NC 28314
(home); 910-525-4151, ext. 264 (work); 910-303-0087 (cell)
Email: jcombs@ncdoj.gov

## PROFESSIONAL CAREER OBJECTIVES

To instruct and manage the academic and training environment consisting of the design, development, and implementation of academic and training curricula, focusing on criminal justice, government, and health/wellness academic programs. Supervise the development of new programs and the expansion of existing programs to include both traditional and distance learning environments.

## TEACHING PHILOSOPHY

In my experience, students seem to be more responsive to direct interaction with their instructor and classmates, rather than passively receiving information during a lecture. For this reason, I find that a dialectic style of education tends to be highly effective. Once the students become accustomed to this method, they respond to the challenge and often initiate interaction themselves. An effective educator must be willing to continually adjust to the needs of the students to reach the primary goal of encouraging learning, and providing the skills and tools necessary to reach that goal. My lengthy experience and education not only makes me more effective in the classroom, it helps me to network my students into desirable positions in their respective chosen career fields. As an educator, I have found it to be highly effective to combine the philosophical, theoretical, and research orientation with the practical, applied, and professional orientation of the subject matter being presented.

## EDUCATION

**Master of Arts**                                                                                           August 2008
**Health Education & Promotion**
East Carolina University
The College of Health and Human Performance
The Department of Health Education and Promotion
Advisor: Dr. Hans Johnson, (252) 328-1818; johnsonh@ecu.edu

**Master of Public Administration**                                                           August 1999
The University of North Carolina at Charlotte
College of Arts and Sciences
Department of Political Science
*Accredited by the National Association of Schools of Public Affairs & Administration (NASPAA)*
Advisor: Dr. Gary Rassel, 704-687-3013, grassel@uncc.edu
Thesis: "Physical Fitness Standards in Law Enforcement."
  ➢ *18 graduate semester hours in Criminal Justice, UNC-Charlotte/East Carolina*
  ➢ *21 doctorate-level semester hours in Adult Education/Training & Development, NC State*

**Professional Certificate**                                            May 2000
**Nonprofit Management**
Duke University
Office of Continuing Education & Summer Session
Durham, NC
> ➤ Courses taken (in order) include:  *Leadership Trough Facilitation; Program Evaluation;*
>    *Meetings That Work; Human Resources Solutions; Developing Strong Volunteer-Staff*
>    *Partnerships; Strategic Planning; Leadership Through Influence; Influencing Public*
>    *Policy; Building a Budget.*

**Bachelor of Arts, Sociology**                                         May 1995
Pfeiffer University
School of Sociology and Criminal Justice
Misenheimer, NC (Cum Laude)
*2 courses from dual degree in Criminal Justice*

**Associate in Applied Science**                                       August 1991
Criminal Justice – Protective Technology
Rowan-Cabarrus Community College
Salisbury, NC (Honors)

## INSTRUCTIONAL/TRAINING EXPERIENCE

**North Carolina Justice Academy**                                     2001-Present
*School Director & Chief Instructor*
*Physical Fitness and Subject Control/Arrest Techniques Training Programs*
*Tactical & Traffic Center*
- Chief instructor and primary liaison to the NC Criminal Justice Education and Training
  Standards Commission for the above programs.
- Direct and control the overall administration, planning, implementation, and daily
  operation of the Physical Fitness and Subject Control/Arrest Techniques Training
  Programs, to include the evaluation of staff, lesson plans, and facilities.
- Supervise and coordinate the Management Development Program Wellness Curriculum.
  Responsible for designing the overall program development and course curriculum,
  scheduling fitness assessments & sessions, researching available resources, and
  evaluating educational materials along with students and staff.  Conduct periodic
  meetings throughout the MDP course as needed for evaluation and revision efforts.
- Research, design, develop, revise, and implement course materials (to include distance
  education),  plan and evaluate training curriculum, methods, materials, and student
  progress based on constant task analyses, interviews, requests, and committee meetings
  with stakeholders throughout the state.
- Develop and recommend new and revised programs, policies, procedures, and
  standards to respond to changes in health program needs, objectives, and
  priorities.

- Serve on the NC Department of Justice Wellness Advisory Committee, the purpose of which is to promote positive physical and mental health practices and to provide information and education regarding health and safety issues to state D.O.J. employees.
- Instrumental in the development of the NCJA Wellness Program, which touches every section of the Academy, provides a wealth of information for health fitness, and promotes healthier lifestyle choices for Academy employees.
- Provide direction, technical assistance, and guidance to school directors and section staff within the realm of fitness and health programs in such areas as decision making, determination of program needs, and program or budget planning.
- Lead subject matter curriculum revision committees responsible for making needed changes in course curriculum based on findings and reports from the field, and for making presentations on needed changes and/or additions to the programs.
- Maintain direct supervision, direction, control, and evaluation over the performance of all persons to whom any portion of the planning, development, presentation, or administration of the courses has been delegated.
- Responsible for the training of all Specialized Physical Fitness and Subject Control Instructors in North Carolina.
- Ensure that course curricula are job-related and applicable, reflect current information and practices, employ appropriate performance-based training methods, and accurately measure student performance in both cognitive and motor skill aspects, based on training evaluation methods that reflect current job environments and agency requirements.
- Develop and supervise skills testing with performance-based dynamic confrontational drills and other approved and appropriate evaluation methods, containing specific sub-skills/components necessary for officer survival, reflecting current needs in the law enforcement field.
- Train law enforcement and detention officers in numerous locations throughout the state in fitness techniques, injury prevention, exercise leadership, motivational techniques, exercise programs, fitness screenings, prescription and testing, officer survival tactics, contact/cover skills, pressure point control, stunning/striking/distraction techniques, impact weapons, take downs and ground defense leading to control, principles of movement and reactionary distances, tactical handcuffing/speed cuffing techniques, weapon retention/takeaway techniques, searching techniques, the use-of-force continuum and legal issues.
- Through periodic assessments, daily physical training workouts, and proper weight management/nutritional planning incorporating concepts of strength and conditioning, cardiovascular training, and plyometric/combat fitness techniques for speed and power development, assist trainees in developing their physical skills, fitness levels, and overall health while emphasizing the improvement of all aspects of physical wellness to a level needed to function effectively as law enforcement officers/instructors.

**North Carolina Justice Academy**                                    1999-2001
*School Director & Chief Instructor*
*North Carolina Police Corps Training Academy*
- Chief instructor and primary liaison to the NC Criminal Justice Education and Training Standards Commission, and the NC Police Corps for the Police Corps Basic Law Enforcement Training Program.

- Responsible for the overall administration, planning, implementation, and daily operation of the 24-week NC Police Corps Training Program.
- Assure compliance with all Training Standards requirements through Title 12 of the NC Administrative Code governing Commission-approved training courses.
- Designed the Police Corps Academy budget instrument, managed the Police Corps Academy budget, and continued to monitor and track program purchases, existing inventory, and staff training and equipment expenses.
- Supervised, monitored, and evaluated the presentations and schedules of over two dozen Justice Academy and adjunct instructors in 33 individual blocks of instruction that comprise the BLET curriculum.
- Responsible for recruiting, selecting, and recommending for hire the most experienced and highest quality instructors to serve as trainers and subject matter experts in the Police Corps Academy.
- Maintained direct supervision, direction, and control over the performance of all persons to whom any portion of the planning, development, presentation, or administration of the courses had been delegated.
- Wrote and distributed *Trainee Guides* on student conduct and Academy policy. Ensured that written documentation was maintained on all aspects of the Police Corps Academy including assessments, injury documentation and action taken, daily logs of activities, and individual counseling sessions.

**Specialized Instructor**                                                                    1994-1999
**Basic Law Enforcement Training & Detention Officer Certification Courses**

Served as a training instructor and student evaluator in basic and specialized instructor certification programs in the physical fitness and defensive tactics areas at the NC Justice Academy (Salemburg, NC), Rowan-Cabarrus Community College (Salisbury, NC), Davidson County Community College (Lexington, NC), and Mitchell Community College (Statesville, NC). Trained and evaluated basic recruits and in-service personnel in physical fitness, arrest and control, and officer survival. Blocks of instruction taught include; Defensive Tactics, Mechanics of Arrest, Subject Control & Arrest Techniques, Physical Fitness, Patrol Techniques, and Ethics.

## COLLEGIATE ACADEMIC TEACHING EXPERIENCE

**Campbell University**                                                                    2001-Present
*Lead Instructor & Adjunct Faculty*
*Department of Government, History, and Justice/Pope AFB Campus*
- Provide instruction in introductory and upper-level baccalaureate courses in the Criminal Justice curriculum, leading to the Bachelor of Science degree.
- Develop course objectives, outline, and curriculum, select and evaluate course materials, texts, and training aids.
- Design and administer exams, develop and grade written and oral course projects.
- Supervise and evaluate student progress and experience gained in real world justice work environments during working internships and thesis projects.

- Maintain liaisons with numerous local and state agencies for the purpose of networking students into choice career fields.
- Review and revise course curriculum to meet mandated changes or industry needs.

*Currently instruct the following courses:*
- Introduction to Criminal Justice
- Introduction to Law Enforcement
- Introduction to Criminology
- Theories of Justice
- Correctional Philosophies and Issues
- Senior Seminar in Criminal Justice
- Internship Program in Criminal Justice
- Criminal Law
- Criminal Justice Organization
- Ethics in Government & Criminal Justice
- Courts and Procedures
- Youth at Risk
- Stress Management & Emotional Survival
- Terrorism
- The National Government
- Victimology

As the *designated lead faculty* for the Criminal Justice program at the Pope AFB campus, I also have the following responsibilities;
- Assist the Campus Director in the supervision and management of faculty assigned to their department.
- Conduct coordination as required with the main campus Department Chair regarding curriculum changes, course changes, exchanging syllabi, and providing the Department Chair with information as requested.
- Assist the Academic Coordinator by providing recommendations regarding the scheduling of departmental courses and assignment of instructors.
- Serve as a member of the Extended Campus Faculty Advisory Council for their respective site.

**Methodist University**                                              2003-Present
*Adjunct Faculty, School of Public Affairs*
*Department of Justice Studies*
- Hold all of the above listed duties and responsibilities

*Currently instruct the following courses:*
- Terrorism and the Homeland Security Response
- Police in an Urban Society (seated and online – Blackboard software)
- Security Management
- Correctional Process (developed as an online course/Blackboard)
- Victimology (developed as an online course/Blackboard)
- Criminology
- Introduction to Law Enforcement

- Ethics
- Stress Management & Emotional Survival

**Mount Olive College**                                    March 2010-Present
*Adjunct Faculty, School of Professional Studies*
*Department of Criminal Justice*
- Hold all of the above listed duties and responsibilities
*Currently instruct the following courses:*
- Family Violence (online – Moodle software)
- Criminal Justice Ethics

**Stanly Community College**                                 2003-2005
*Adjunct Faculty, Criminal Justice*
- Held all of the above listed duties and responsibilities
*Have instructed in the following course:*
- Organization and Administration (online – WebCt software)

## RESEARCH INTERESTS

My primary research interests are associated with the learning theories and practical applications of motor skill development as they relate to training transfer effectiveness, physical fitness levels, and officer survival issues. This includes theories and philosophies on the design, development and implementation of optimal training environments that maximize skill development while maintaining realism and safety. In addition, I have research interests in the development, implementation, and evaluation of the effectiveness of scenario-based learning environments and training program development. My current work also focuses on holistic wellness, physiological and psychological responses to stress, survival stress research, and their effects on officer skill and reactive ability. Further, I am interested in what type of training environments are best suited for the overall cognitive, ethical, and motor skill development of a justice professional, to include personality development, speaking and writing skills, emotional and political survival, organizational compatibility, and safety. In the future, I would like to combine laboratory and field work to examine these behavioral issues.

## TRAINING CURRICULA DEVELOPED, EDITED, & REVISED

In the course of my employment at the North Carolina Justice Academy, I have developed and/or revised/edited the following training curricula (all are under constant and ongoing revision):
- *Specialized Subject Control & Arrest Techniques Instructor Training Manual* – Revise and Edit the following blocks of instruction:
  - Course Orientation
  - BLET Subject Control Lesson Plan
  - Practical Skills Enhancement
  - Injury Prevention
  - Combat Conditioning
  - Safety Guidelines
- Developed the *Basic and Advanced Ground Defense Instructor Training Courses*

- Developed *Understanding Force Option Selection*
- Developed *Spontaneous Attack Defense for Detention Officers*
- Developed *Basic Subject Control & Arrest Techniques*
- Developed *Basic Ground Defense Training*
- *Specialized Physical Fitness Instructor Training Manual* – Continually revise and edit the following blocks of instruction:
    - Course Orientation
    - CVD Risk Factors
    - Fitness Assessments
    - Fitness Programs
    - Nutrition Awareness
    - Wellness Programs & Fitness Standards Validation
    - Care & Prevention of Common Injuries
    - BLET Fitness Lesson Plan
- Developed *Stress Management for Law Enforcement* – Traditional & Online courses
- Developed *Functional Conditioning for Motor Skills Development*
- Developed *Wellness & Stress Awareness for Law Enforcement, Train-the-Trainer* (a part of mandatory state-wide In-Service Training for 2006)
- Developed *Impact Weapons & Handcuffing* for 2007 In-Service Training
- Revised *Physical Fitness & Functional Conditioning for SWAT* (Instructor Course)
- Developed *Nutrition for Management Development Program* (Wellness block)
- Developed *Fitness for Combat Readiness*
- Developed *Weapon Retention and Disarming Techniques* for 2008 In-Service Law Enforcement Training
- Developed *Close Quarter Combat* for 2008 In-Service Detention Officer Training
- Developed *Combat Readiness for SWAT Operator II*
- Developed *In-Service Wellness and Validating Fitness Standards* for the Specialized Physical Fitness Instructor Training Course
- Developed *OC Spray Training* for NC Justice Academy Staff Training, 2008
- Developed *Workplace Safety & Ergonomics* for NC Justice Academy Staff Training, 2009
- Developed *Combat Conditioning* for the Specialized Subject Control & Arrest Techniques Instructor Training Course, 2009
- Developed *Health & Fitness for Telecommunicators*, NCJA 2009 State Conference
- Developed *Health & Fitness for Detention Officers* for 2010 In-Service Detention Officer Training
- Developed *Ground Control, Defense, and Escape* for 2010 In-Service Law Enforcement Training
- Developed *Subject Control for Detention Officers* for 2011 In-Service Detention Officer Training
- Developed *Healthy Living for Telecommunicators*, 2011 In-Service Training



## PUBLISHED ARTICLES

Combs, John E. (2010). Developing voluntary in-service wellness programs & validating mandatory fitness standards (part II). *IADLEST Newsletter, 21(3)*, July 2010, 9-14.

Combs, John E. (2010). Developing voluntary in-service wellness programs & validating mandatory fitness standards (part I). *IADLEST Newsletter, 21(2)*, April 2010, 12-15.

Combs, John E. (2007). Functional conditioning (part II). *The Firearms Instructor.* Issue 43.

Combs, John E. (2006). Functional conditioning (part I). *The Firearms Instructor.* Issue 41.

Combs, John E. (2005). Transfer training effectiveness. *Law and Order.* Under review for publication in an upcoming "Training" issue.

Chapman, Valerie-Lee, Sork, Thomas J. and associates. (2003). Talking intelligibly about planning/theories, not. *Proceedings of the 33rd SCUTREA Annual Research Conference.* Bangor, Wales: U. Of Bangor.

Combs, John E. (2003). Motor skill learning theory (part II). *Use of Force Journal, 3(2).*

Combs, John E. (2003). Motor skill learning theory (part I). *Use of Force Journal, 3(1).*

Combs, John E. (2002). Scenario-based training. *Use of Force Journal, 2(6).*

Combs, John E. (2002). Distance education. *FBI National Academy Associate, 4(4)*, 13-14; 18-20.

*IADLEST will be publishing "Developing Voluntary In-Service Wellness Programs & Validating Mandatory Fitness Standards (part III)" in an upcoming issue.*

## EXPERT WITNESS OPINIONS

In the course of my employment at the North Carolina Justice Academy, I have been retained and accepted as an expert witness in both the federal and state court systems (multiple jurisdictions), and have provided written and oral opinions along with courtroom testimony in the following use of force and physical fitness cases:

Nikki Thompson v. City of Danville, VA & City of Danville Police Department and Sgt. V.T. Brown. United States District Court for the Western District of Virginia, Danville Division; 4:10-CV-00012. Attorney: James A.L. Daniel, Daniel, Medley, & Kirby, P.C. 434-792-3911 *(Use of TASER on handcuffed female suspect after arrest following traffic stop). Discovery.*

Tammy Lou Fontenot, as Administratrix of the Estate of Darryl Wayne Turner, deceased v. TASER International, Inc.et al. United States District Court for the Western District of NC,

Charlotte Division; 3:10-CV-125. Attorney: John R. Maley, Barnes & Thornburg, LLP, 317-231-7464 *(TASER use by officer during arrest). Discovery.*

Roberts v. City of Kinston, et al. United States District Court, Eastern District of NC, Eastern Division; 4:09-CV-00207-F. Attorney: Scott C. Hart, Sumrell, Sugg, Carmichael, Hicks, & Hart, P.A. 252-633-3131 *(TASER, OC, Strikes, and Takedowns during undercover drug buy). Discovery.*

White v. Van Duncan. U.S. District Court for the Western District of NC, Asheville Division; 1:10CV14-03-MU. Attorney: Curtis W. Euler, Associate County Attorney, Buncombe County, 828-250-4112 *(TASER use and take-down during cell extraction)*

Stephen Williamston, et ux. v. Youngsville Police Department, et al. U.S. District Court for the Eastern District of NC; 5:09-CV-543. Attorney's: Jim Secor & William Hill, Frazier, Hill, & Fury, 336-378-7785 *(UOF, strikes and LVNR on resisting handcuffed arrestee). Settled at mediation, 09/22/10.*

Tevin Boose and Sandra Winters v. Joel Cooper and Plaza Associates, Inc. Wake County, Civil Action No.: 09 CVS 22782. Attorney: Carrie Barbee, Ragsdale Liggett PLLC, 919-881-2221 *(broken arm after quick-take arm bar outside mall, during arrest)*

David Rose v. Wayne County Sheriff's Office and Sheriff Carey A. Winders. United States District Court, Eastern District of NC, Western Division, Civil Action 5:09-CV-00366. Attorney: Dan Hartzog, Jr., Cranfill, Sumner, & Hartzog, 919-863-8736 *(deputy terminated – fitness for duty issue, physical demands)*

Steven Wayne Thomas v. R.V. Holly, et. al. District Court for the Eastern District of NC, Western Division, Civil Action 5:10-CV-52-BO. Attorney: Bradley Wood/Womble, Carlyle, Sandridge & Rice, 336-728-7012.

Jerry Scantling v Onslow County Board of Commissions/Sheriff's Department. I.C. No. 096774. CS&H No. 1103.991679. Attorney: Brian Kromke/ Cranfill, Sumner, & Hartzog, 910-332-0949. *Discovery.* Deposition, May 7, 2010, Salemburg, NC *(stroke after a departmental physical fitness test).*

Whitley v. Scotland Neck. General Court of Justice, Superior Court Division, Halifax County, NC. Civil Action No.: 5:08-CV-427-D. Attorney: Kari Johnson/ Cranfill, Sumner, & Hartzog, 919-863-8722. *Discovery (subject shot by police after he shot at officers at different locations)*

Danny Ray Bridges v. Chad Murray, et al. United States District Court, Western District of North Carolina (Asheville Division). Civil Action No.: 1:08-CV-00013-GCM. Attorney: Scott MacLatchie/ Womble Carlyle Sandridge & Rice, 704-331-4942. *Discovery.* Deposition, July 29, 2009, Charlotte, NC *(plaintiff received a broken nose after deputy delivers a closed-fist strike while struggling during an arrest). Settled, 09/30/10.*

Smith v. Garcia and the Town of Spring Lake. General Court of Justice, Superior Court Division, Cumberland County, NC. Civil Action No.: 08-CVS-10893. Attorneys: Kari Johnson & Dan Hartzog/ Cranfill, Sumner, & Hartzog, 919-863-8722. *Discovery.*

James David Moss v. Jeffrey N. Mackey, Town of Maggie Valley Police, et al. United States District Court, Western District of North Carolina (Asheville Division). Civil Action No.: 1:07-CV-135. Attorney: Scott MacLatchie/ Womble Carlyle Sandridge & Rice, 704-331-4942. *Case Dismissed in Summary Judgment (officers used pepper spray to control resisting subject).*

Richard Edward Breitwieser and Joshua Crihfield v. Danville Police Department, et al. U.S. District Court, Western District of Virginia (Danville Division). Consolidated Case No.: 4:07-CV-00010. Attorney: Jeremy Carroll/Glenn, Feldmann, Darby & Goodlatte, 540-224-8036. *Case Dismissed in Summary Judgment (TASER used during arrest at a convenience store).*

Jimmy D. Ridge v. City of Randelman, et al. General Court of Justice, Superior Court Division, Randolph County, NC. Civil Action No.: 07 CVS 793. Attorney: Kari Johnson/Cranfill, Sumner, & Hartzog, 919-863-8722. *Discovery (shooting during traffic stop after plaintiff came after officer with a blade).*

State v. Michael Loukos. General Court of Justice, Superior Court Division, Wilkes County, NC. Criminal Action No.: 07-CRS-821. John Sherrill/Assistant District Attorney, 336-667-0109. Served as expert witness/consultant for SBI and Wilkes County District Attorney's Office. *Officer convicted on misdemeanor charge.*

Christie Arrington v. Michelle Peele. United States District Court, Eastern District of North Carolina, Western (Raleigh) Division. Civil Action No.: 507 CV 00011BO. Attorney: Norwood Blanchard/ Cranfill, Sumner, & Hartzog, 910-332-0944 *(officer shot suspect who attempted to strike her with stolen motor vehicle).*

Anthony Wright v. Oxford Police et al. United States District Court, Eastern District of North Carolina, Western (Raleigh) Division. Civil Action No. 5:05 CV-804-FL (2). Attorney: Kari Johnson/Cranfill, Sumner, & Hartzog, 919-863-8722. *(OC spray used on plaintiff during an arrest while attempting to serve a warrant). Summary Judgment granted, October 2007.*

Manuel Pena v. Town of Clayton, et al. United States District Court, Eastern District of North Carolina, Western Division. Civil Action No. 5:04 CV-970-BR(3). Attorney: Brian Edes/ Crossley McIntosh Prior & Collier, Wilmington, NC, (910) 762-9711. Deposition date, February 27, 2006 Raleigh, NC. Trial testimony, September 17, 2009. *Jury found for defendants on excessive force claim (shooting while attempting to locate an escaped prisoner).*

Charles Alford v. Cumberland County, et al. United States District Court, Eastern District of North Carolina. No. 5:04-CV-108-FL(3). Attorney: Doug Canters/Assistant County Attorney, Cumberland County, 910-678-7760. Deposition date, April 5, 2005 Fayetteville, NC *(shooting during a drug raid after suspect grabbed officer's weapon).*

Bobby Reed and Melissa Reed v. City of Lavonia, et al. United States District Court, Middle District, Athens Division. CAFN: 3:03-CV-111(CAR). Attorney: Thomas Mitchell, 770-932-3552. Deposition date, 09/17/04 Buford, GA. Trial testimony, August 17, 2005 Athens, GA. *Case settled after trial (ASP baton used during struggle with arrestee on the side of the interstate during traffic stop).*

Lori Gamble Harvey v. Town of Kernersville, NC. United States District Court, Middle District of North Carolina. 1:03CV00505. Attorney: Pat H. Flanagan/Cranfill, Sumner, & Hartzog, 704-940-3442. Deposition date, 04/08/04 Raleigh, NC. *Case settled (arrestee's leg broken during a sweep take-down during traffic stop).*

Mary Ann Brummell and Louise J. Brummell v. City of Oxford, NC. United States District Court, Middle District of North Carolina. 5:00-CV-621-F(2). Attorney: Missy S. Sumerell/Cranfill, Sumner, & Hartzog, 704-940-3442. *Dismissed in Summary Judgment - on appeal.*

## INVITED PRESENTATIONS

"Developing and Validating Physical Fitness Standards." International Conference – International Law Enforcement Educators & Trainers Association (ILEETA), Chicago, IL, April 2011.

"The Police Officer Physical Abilities Test (POPAT)." International Conference – American Society of Law Enforcement Trainers, Albuquerque, New Mexico, January 2006.

"Nutrition for Life – Wellness and You." North Carolina Department of Justice, Raleigh, North Carolina, October 2005.

"Functional Conditioning for Motor Skill Development." International Conference – American Society of Law Enforcement Trainers, Jacksonville, Florida, January 2005.

"Stress Management." North Carolina Correctional Association Annual Conference, Durham, NC. November 18, 2004.

"Functional Conditioning for Motor Skill Development." Physical Fitness Instructor's Conference – Coastal Plains Law Enforcement Training/Wilson Technical Community College, Wilson, NC. March 3, 2004

"Functional Conditioning for Motor Skill Development." International Conference – American Society of Law Enforcement Trainers, St. Louis, Missouri, January 2004.

"Stress Management for Law Enforcement Officers." International Conference - American Society of Law Enforcement Trainers, Ontario, California. January 9, 2003.

"Understanding the Use of Force Continuum." Police Liability Seminar – Lorman Educational Services, Raleigh, North Carolina. July 25, 2002.

"Ground Defense for Law Enforcement." NC Department of Correction – Less Than Lethal Defensive Tactics Conference, Raleigh, North Carolina. May 30, 2002.

"Stress Management." NC Telecommunicator's Conference, Raleigh, North Carolina. October 5, 2001.

"Stress Management for Law Enforcement Officers." Southwestern Illinois Law Enforcement Commission, Belleville, Illinois. September 18, 2001.

"Stress Management for Law Enforcement Officers." East Central Illinois Police Training Project, Urbana, Illinois. May 29, 2001.

"Stress Management for Law Enforcement Officers." International Conference – American Society of Law Enforcement Trainers, Orlando, Florida. February 16, 2001.

## PROFESSIONAL ORGANIZATIONS/COMMITTEES (past & present)

- Co-Chair, Pfeiffer University Criminal Justice Curriculum Advisory Board
- Chair, NC Justice Academy *Fit to Live* Workplace Wellness Committee
- Faculty Advisory Council, Campbell University/Ft. Bragg & Pope AFB campuses
- NC Department of Justice, Wellness Advisory Board
- USA Track & Field Member
- National Strength and Conditioning Association
- National Strength and Conditioning Association, Tactical Strength & Conditioning
- American College of Sports Medicine, Alliance of Health and Fitness Professionals
- MPA Alumni Interest Group, UNC-Charlotte
- NC Law Enforcement Training Officer's Association
- American Society of Law Enforcement Trainers – Former NC State Director/Representative
- International Law Enforcement Educators and Trainers Association
- Diver's Alert Network (PADI Divemaster )
- Florida SWAT Association
- NC Department of Juvenile Justice, Subject Control Curriculum Advisory Board
- Chapter President – Southern Piedmont Chapter, NC Police Benevolent Association, 1994 -1998
- Alpha Kappa Delta, Pfeiffer University, 1994

## RELEVANT PROFESSIONAL EXPERIENCE

**Police Officer**                                                                                   1987-Present
- Served as a full-time sworn law enforcement officer (1987-1999) with the Atlanta, Clayton County (GA), Salisbury and Kannapolis (NC) Police Departments.
- Assignments included: Patrol, Housing Authority, Undercover and Surveillance, Bicycle Patrol, School Resource Officer, Field Training Officer, Background Investigations, In-

Service Training, SWAT, continual Criminal Case and Traffic Crash Investigation, and the Accreditation Management Team.

- Served as a sworn Reserve Police Officer with the City of Greensboro (December 1999-2010), in the Special Operations Division. Worked uniform patrol in all districts of the city, handled calls for service, maintained pro-active patrol, and emergency response. This was a sworn, paid position with full arrest powers and duties.
- Served with the Apex P.D. as a sworn, Reserve Police Officer from May-October 2010 in the Training Division.
- Currently sworn with the Fayetteville P.D. as a Reserve Police Officer. Assigned to the Campbellton Patrol District. Work uniform patrol in my assigned district, handle calls for service, maintain pro-active patrol, and emergency response. This is a sworn position with full arrest powers and duties.

## SPECIALTY & INSTRUCTOR CERTIFICATION COURSES

### Physical Fitness, Health & Wellness

- Health Promotion Director (Cooper Institute of Aerobics Research)
- Certified Strength & Conditioning Specialist (NSCA)
- Certified Health/Fitness Specialist (American College of Sports Medicine)
- Specialized Physical Fitness Instructor (NC Dept. of Justice)
- Physical Fitness Specialist (Cooper Institute of Aerobics Research)
- Level 1 Track & Field Coach (USA Track & Field)
- Fitness Coordinator and Combat Fitness Instructor (Fit Force)

### Subject Control/Use of Force

- Certified Criminal Justice School Director (NC Dept. of Justice, Criminal Justice Education & Training Standards Commission)
- Specialized Defensive Tactics Instructor (NC Dept. of Justice)
- Subject Control and Arrest Techniques Instructor (NC Dept. of Justice)
- 2nd Degree Black Belt (Ni Dan), Keikan Jitsu
- Basic Ground Defense Instructor (NC Dept. of Justice)
- Advanced Ground Defense Instructor (NC Dept. of Justice)
- PPCT Defensive Tactics Instructor (Pressure Point Control Systems, Inc.)
- Use of Force Instructor (National CJ Training Council)
- TASER Instructor (TASER International, Inc.)
- S.P.E.A.R. Instructor (Blauer Tactical Confrontation Management Systems)

### Officer Safety, Munitions, Medical

- Officer Safety Instructor (NC Dept. of Justice)
- Tactical Baton Instructor (Armament Systems and Procedures)
- H&K Redman Simulations Instructor
- Simunitions Supervisor/Instructor

- OC Spray Instructor (Armor Holdings)
- Chemical Munitions Instructor (Armor Holdings)
- Specialty Impact Munitions Instructor (Armor Holdings)
- Distraction Devices Instructor (Armor Holdings)
- NC EMT-Basic
- Diver Medical Technician/National board of Diving and Hyperbaric Medical Technology
- International Trauma Life Support (Advanced)

## REFERENCES

From my superiors and students:

*"John does a great job for the Academy and is one of our finest and best qualified CJ Training Coordinators. He has an intense passion for what he does and is an asset to the Academy. John lives and breathes what he teaches and is a model for health fitness, internally and externally."*

*"I want to complement John on an outstanding job teaching in-service.....A tough crowd, but he had all of us focused! The NCJA is fortunate to have a true fitness expert, both as an academic as well as a practitioner."*

*"We are very fortunate to have John on our staff. I just wish more staff members would take advantage of our fine physical training facilities and John's expertise."*

*"John Combs, thank you for your continued guidance in the areas of wellness and fitness. Thank you also for your personal encouragement. You provide such inspiration without ridicule and insult. Thank you."*

*"Wanted to thank you again for the high quality of instruction you and your staff provided to me. Got a lot of positive feedback from my students and am certain this will help make the performance of our jobs much safer."*

*"Just wanted to let you know I appreciate your encouragement and motivation in the realm of fitness. I found out Monday that in this past weekend's race, I came in first for my age group in the Law Enforcement/ Military Division!"*

| | |
|---|---|
| Dr. Charles Franquet<br>Director, Ft. Bragg Campus<br>Campbell University<br>P.O. Box 70659<br>Ft. Bragg, NC 28307<br>910-436-3242<br>franquetc@campbell.edu | Peggy M. Schaefer<br>Director<br>NC Justice Academy<br>P.O. Box 99<br>Salemburg, NC 28385<br>910-525-4151, ext. 285<br>pschaefer@ncdoj.com |

| | |
|---|---|
| Lt. Col. Matthew J. Dansbury (U.S. Army, Ret.)<br>Assistant Inspector General<br>USASOC, Army Compartmented Element<br>SCAMPI/RED/DSN PHONE: (910) 239-6079<br>Commercial (STE): (910) 432-6079<br>NIPRNet: dansburm@soc.mil<br>SIPRNet:<br>**dansburm@usasoc.socom.smil.mil** | Dr. Eric See<br>Chair, Department of Sociology and Criminal Justice Studies<br>Methodist University<br>5400 Ramsey Street<br>Fayetteville, NC 28311-1420<br>910-630-7459<br>esee@methodist.edu |
| Lt. John W. Moore<br>UNC-Chapel Hill Police Department<br>285 Manning Drive<br>Chapel Hill, NC<br>919-966-2120<br>jwmoore@psafety.unc.edu | Lt. Bill Dubois<br>Fayetteville State University Police<br>1200 Murchison Road<br>Fayetteville, NC 28301<br>910-391-1815<br>wdubois@uncfsu.edu |